# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

VINTAGE PLASTICS, LLC, )
)
       Plaintiff, )
)
v. ) Case No. 10-CV-796-GKF-PJC
)
MASSACHUSETTS BAY INSURANCE )
COMPANY, )
)
       Defendant. )

## OPINION AND ORDER

Before the Court is the Motion for Partial Summary Judgment [Dkt. #19] of defendant, Massachusetts Bay Insurance Company ("MBIC"). This action for breach of insurance contract and bad faith arises from MBIC's denial of plaintiff Vintage Plastics, LLC's ("Vintage") claim for loss from wind and hail damage to its facility in Tulsa. MBIC seeks summary judgment on Vintage's bad faith claim and on Vintage's claim for punitive damages.

### I. Material Facts[1]

1. MBIC issued a policy of business insurance (the "Policy") to Vintage which, among other things, insured against losses to Vintage's real and personal property resulting from causes including windstorm and hail. [Dkt. #27, Ex. A, Policy at 4-6, 38, 40].

2. The Policy insured Vintage for "replacement cost without deduction for depreciation." [*Id.* at 40].

---

[1] MBIC asserted 11 undisputed material facts. Plaintiff did not dispute any of those facts. Thus, pursuant to Fed.R.Civ.P. 56(3)(2) and (3) and LCivR56(c), those facts are deemed admitted for purposes of this motion.

3.  The policy states, in pertinent part:

**I. COVERAGE**

    **B. Exclusions**

        **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

            \*   \*   \*

        **j. Other Types of Loss**
            **(1)** Wear and tear; mechanical breakdown (except as provided for in the Equipment Breakdown Additional Coverage);

            **(2)** Rust, corrosion, fungus, decay, deterioration, depletion, erosion or other gradually developing condition; hidden or latent defect or any quality in property that causes it to damage or destroy itself; …

[Dkt. #40, Ex. 8, Policy].

3.  The subject roof was original to the building and built in the 1980s. [Dkt. # 19, Ex. 1].

4.  The Policy had been in effect for approximately four years at the time of the insured loss. [Dkt. #27, Ex. B, Email from Mark Meigs to Jeff Alexander and Darcy Spence].

5.  In February of 2009, MBIC had the insured premises, including the roof, inspected by an agent, Reliable Reports, Inc. ("RRI"). [Dkt. #27, Ex. C, Leemon Howard Johnson Dep., 21:16-22:13 and Exs. 1 and 2 thereto].[2]

---

[2] The report, submitted by Vintage, contains a three-page chart with cryptic remarks about the insured premises. [Dkt. #33, Ex. A]. The heading "Construction Comments" has the comment, "Building is in satisfactory condition." The heading "Roof and Roof Drains" has the comment, "Satisfactory." Smoke detection is at the local level." "The heading "Building condition" has the comment "Good." The heading "Wind Damage Potential" has the comment, "Satisfactory." The heading, "General Liability Comments," has the comment, "No general liability concerns." The heading "General Liability" has the comment, "Satisfactory."

6. The report submitted by RRI's inspector, Steve Foster, regarding his inspection of the premises on or about February 2, 2009, in connection with its underwriting activities, was not produced in MBIC's response to Vintage's Request for Production of Documents and is not shown as having been considered in the adjustment of Vintage's claim. [Dkt. #27, Ex. D, Plaintiff's Request for Production of Documents; Ex. E, Email from Amy R. Steele].

7. Following RRI's February, 2009, inspection, no policy cancellation notice or notice of any problems with the insured's roof was given to Vintage, and the policy remained in effect on March 23, 2009, the date of the insured's claimed loss. [Dkt. #27, Plaintiff's Statement of Material Facts, ¶7; Dkt. #31, Defendant's Response to Plaintiff's Statement of Material Fact at 2-3].

8. Vintage's Directing Manager, Lee Johnson, testified that on March 23, 2009, a storm consisting of strong winds and hail affected various areas of Tulsa County, Oklahoma, and resulted in windstorm and hail damage to Vintage's HVAC system and to the roof of its business premises. [Dkt. #27, Ex. C, Johnson Dep., 24:10-26:14].

9. As a result of the storm, several businesses in the affected area had to re-roof. A neighboring business close to Vintage's facility had its roof lifted, torn apart and transferred to Vintage's premises by the force of the storm's winds. [Dkt. #27, Ex. G. Alan Harcrow Dep., 13:10-14:10].

10. Johnson testified he contacted Mark Meigs, the insurance agent who sold him the policy, in April of 2009, concerning the damage to Vintage's property. Meigs agreed to contact MBIC. [Dkt. #27, Ex. C, Johnson Dep., 32:9-21]. Johnson stated that "time went by" and he heard nothing, so he called Meigs again and told him he'd heard from nobody. [*Id.,* Johnson Dep., 32:22-24]. Meigs told him he would find out. [*Id.,* Johnson Dep., 32:25]. More time went

3

by. [*Id.,* 33:1-3]. Johnson testified it was "days" between his calls to Meigs. [*Id.,* 33:4-8]. Johnson said it was three to five weeks before he heard from Jeff Alexander. [*Id.,* 33:10-17].

11. On or about June 1, 2009, Vintage received a notice of nonrenewal of insurance policies, including the Policy at issue. [Dkt. #31, Ex. 1, Emails Between Kim McIntire and Mark Meigs]. Vintage employee Kim McIntire emailed Meigs, asking why the policies were not being renewed. [*Id.*]. Meigs explained, the insurer "is no longer writing your type of business," and "we are shopping it and will have a new company soon." [*Id.*]. He advised the expiration date of the policy was 08/24/2009. [*Id.*]

12. On July 28, 2009, Meigs sent MBIC a Property Loss Notice for Vintage. [Dkt. #19, Ex. 1; Dkt. #31, Ex. 2]. On July 29, 2009, adjuster Jeff Alexander contacted the insured to arrange an inspection of the roof. [*Id.*].

13. Johnson testified that when Alexander, called, "he put me on the defensive right away. He was agitated right form our very first conversation. He assured me that there was no way I had any roof damage because there's no storms in our area. And that him and an engineer would be out to look this over." [Dkt. #27, Ex. A, Johnson Dep.*,* 33:16-23].

14. On July 31, 2009, Alexander inspected the subject roof and HVAC. MBIC has attached photographs taken by Alexander during the inspection. [*Id.,* Ex. 2, Photographs dated July 31, 2009, taken by Alexander]. The pictures have descriptive captions. [*Id.*].[3]

---

[3] MBIC, in its Statement of Material Undisputed Facts, states, "As of July 31, 2009, the subject roof was in disrepair and deteriorated with signs of prior leaking problems, dried up seals, cracked seals, insufficient drainage, rusted screw holds, worn rubber washers, and old caulk." [#19, Defendant's Statement of Material Fact ¶6]. Further, "[u]pon inspection, Mr. Alexander did not find evidence of hail dents on the roof or any of the roof's metals, other than the soft metal of the air conditioner coils." [*Id.,* Defendant's Statement of Material Fact ¶7]. The captioned photographs are not, standing alone, sufficient to establish these alleged "facts" regarding the condition of the roof.

15. MBIC retained Dennis P. Dunkelgod, P.E., an independent engineer from Rimkus Consulting Group, Inc.to inspect the subject roof. [*Id.,* Ex. 3, Dunkelgod Report, p. 4]. Dunkelgod and Rimkus senior consultant Mark W. Jensen met with Johnson and his roofing contractor, Thomas May of Agape Roofing and Construction and inspected the roof on October 6, 2009. [*Id.,* p.5]. May accompanied the Rimkus consultants during their inspection of the facility. [*Id.*].

16. In his report, dated November 3, 2009, Dunkelgod concluded there was minor wind damage to the composition shingles on the south side of the office roof façade, but no wind damage to the built-up modified bitumen roof over the office and the standing seam metal panel roof over the warehouse. [*Id.*]. He found no hail damage to any of those areas. [*Id.*]. He believed interior leaks on the interior of the building were caused by age/and or weather deterioration of the roof flashings at penetrations (e.g. air conditioning units, pipe vents, etc.) through the modified bitumen built-up roof over the office portion of the building. He opined that water ponding on the roof is exacerbating the number of leaks due to the migration of water through the modified bitumen membrane. [*Id.*]. He concluded differential movement, due to seasonal thermal expansion and/or contraction of the metal roof panels, is causing the metal panel laps to improperly seal and/or align, allowing water to infiltrate during blowing rains; and loose fasteners on the metal parapet wall flashings are also due to seasonal thermal expansion and/or contraction movement. [*Id.*]. He stated the movement is not the result of wind forces or hail impact. [*Id.*].

17. On November 9, 2009, MBIC sent Vintage a letter in which it stated that "the damages claimed to the roof are not covered" by the Policy. [Dkt. #27, Ex. L at p. 1]. The letter stated:

5

> A review of your policy indicates that coverage is excluded for losses to your roof caused by wear and tear, settling, cracking, shrinking, expansion &/or faulty, inadequate or defective installation, design or materials. In addition, coverage is excluded for the water damaged ceiling tiles because the roof did not sustain damage by a Covered Cause of Loss.

[*Id.*].[4]

18. On November 13, 2009, MBIC issued a check to Vintage in the amount of $2,534.46. [Dkt. #19, Ex. 4, Payment History Screen]. This amount represents a claim evaluation of $3,534.46, less the insured's $1,000 deductible. [*Id.,* Ex. 6, Johnson Dep., 89:24-90:4].[5]

19.  Vintage has submitted testimony of Ken DuBois of Tulsa Commercial Roofing, the company that ultimately replaced Vintage's roof. [Dkt. #27, Ex. I, Dubois Dep.]. DuBois testified he saw wind and hail damage on the roof. [*Id.*, 16:14-17:15].

20.  Vintage also submitted the Affidavit of Jamison Hummel, an employee of Agape Roofing and Construction, who opined the property damage "was caused by windstorm and hail, including wind which caused uplift on the roof resulting in the heads shearing off screws and bolts and roof guttering to twist and bend." [Dkt. #27, Ex. J, Jamison Affid., ¶3].

21.  Additionally, Vintage submitted the testimony of Marvin McDonald, of Climate Control Co, the company the performed repairs on Vintage's HVAC units. [Dkt. #27, Ex. K, McDonald Dep.]. McDonald testified the plenum on one of the units was bent or twisted, and that he believes damage was caused by "some kind of lifting action" such as a "mini burst" or "mini tornado." [*Id.,* 23:7-24:6].

---

[4] The letter stated covered building repairs totaled $3534.46, less "Building Depreciation" of $1024.38 and deductible of $1000.00, for a total claim of $1510.09. [*Id.* at 4]. Ultimately, however, the check tendered to Vintage did not withhold the "Building Depreciation" amount.

[5] The check was voided because it was never cashed, but counsel for MBIC advised counsel for Vintage the insurer will issue a replacement check at any time Vintage requests. [Dkt. #19, Ex. 5, May 19, 2011, Letter from Amy R. Steele to N. Franklyn Casey].

## II. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment, and the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 8353, 863 (1982).

Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact, but must support such assertions by citing to particular parts of the record, including depositions, documents, affidavits or other materials.  Fed.R.Civ.P. 56(c)(1).  An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Fed.R.Civ.P. 56(c)(4).  Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact.  *L & M Enters., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284, 1287 (10th Cir. 2000).  [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

## III. Analysis

Vintage asserts MBIC acted in bad faith by unreasonably interpreting the terms of the insurance policy and failing to reasonably investigate and adjust the claim.[6]  MBIC contends it is

---

[6] Johnson testified he contacted Meigs in April of 2009, and Meigs did not turn in the claim until July 29, 2009.  MBIC states in a footnote that "[a]lthough Mr. Johnson may have talked with Mr. Meigs about the claim soon after the storm, Mr. Johnson requested that Mr. Meigs not report the

7

entitled to summary judgment on the bad faith claim and alternatively, to summary judgment on Vintage's claim for punitive damages.

In *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okla. 1977), the Oklahoma Supreme Court found that an insurer has a duty to deal fairly and in good faith with its insured, and a violation of that duty gives rise to an action in tort for consequential and, possibly, punitive damages. A "clear showing" that the insurer acted unreasonably and in bad faith is necessary to show a breach of that duty. *Id.* at 905.

"Under Oklahoma Law, the only tort recognized by this Court in connection with a breach of insurance contract is '[w]here there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.'" *Claborn v. Washington National Insurance Co.,* 910 P.2d 1045, 1051 (Okla. 1996). There is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured. *Id.* Further, "an insurer clearly has the right to litigate any claim to which an insurer has a reasonable defense." *Id.*

"The decisive question is whether the insurer had a good faith belief, *at the time its performance was requested, that it had justifiable reason for withholding payment under the policy. Sims v. Great American Insurance Co.,* 469 F.3d 870, 891 (10th Cir. 2006). The insurer's "knowledge and belief … during the time period the claim is being reviewed is the focus of a bad faith claim." *Id.* at 138 (citing *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105 (Okla. 1991)).

An insurer may withhold payment from its insured whenever it has a reasonable defense to the insured's claim based on its knowledge and belief. *Bailey v. Farmers Ins. Co.,* 137 P.3d 1260, 1264 (Okla. Civ. App. 2006) (citing *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760 (Okla.

---

claim until late July." [Dkt. #31 at 3, n. 2]. MBIC provides no evidence supporting this statement.

1984)).  This includes when the insurer and insured have legitimate disputes over the amount of coverage or the cause of loss.  *Skinner v. John Deere Ins. Co.,* 998 P.2d 1219, 1223 (Okla. 2000). "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law," and the insurer is entitled to summary judgment.  *Beers v. Hillary,* 241 P.3d 285, 293 (Okla. Civ. App. 2010) (citing, *inter alia, Manis* at 761-62).

The Tenth Circuit stated the issue presented to a trial court on an insurer's motion for summary judgment in a bad faith lawsuit as follows:

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct.  *On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious.*  Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds v. Principal Mutual Life Ins. Co.,* 6 F.3d 1431, 1436-37 (10th Cir. 1993) (emphasis added).

However, "[t]he simple presence of a legitimate dispute does not necessarily end the inquiry.  Instead, it shifts the burden to the insured to present additional evidence of bad faith. Most commonly, the insured asserts an insurer's failure to 'conduct an investigation reasonably appropriate under the circumstances.'"  *Sims v. Great American Life Insurance Co.,* 469 F.3d 870, 891 (10th Cir. 2006).  An investigation does not meet this standard if (1) the manner of investigation hints at a sham defense or otherwise suggests that material facts were overlooked, or (2) the insurer intentionally disregarded undisputed facts supporting the insured's claim.  *Id.*, (citing *Oulds,* 6 F.3d at 1442).

Here, Vintage contends its roof and HVAC units were damaged in a storm.  MBIC, relying on the adjustor's initial inspection and the Rimkus inspection and report, denied

Vintage's claim, concluding the damage was the result of wear and tear rather than the storm. The Policy terms are unambiguous and clearly provide there is no coverage for damage caused by age, deterioration and disrepair, and the terms are to be given their ordinary, plain meaning. *See Bituminous Cas. Co. v. Cowden Const., Inc.,* 55 P.3d 1030, 1033 (2002). Thus, there appears to be a legitimate dispute regarding coverage.

Vintage, though, asserts the investigation hints at a sham defense, and cites the following evidence:

- The testimony of Tulsa Roofing, Agape Roofing and Climate Control witnesses that the damage was the result of hail and wind;

- The adjuster failed to refer to or include the RRI inspection performed in February 2009; the RRI inspection showed the roof was not leaking.

- The adjustor failed to investigate reports of storm damage to other buildings in the area;

- In his initial contact with Vintage, the adjustor told Johnson there was no way the roof had sustained storm damage because there was no storm damage in the area;

- The policy is for replacement cost; if MBIC—which had the roof inspected shortly before the storm—believed the roof was unfit for replacement cost coverage based on poor design, lack of maintenance or age and deterioration, it should have declined to write the coverage or cancelled it.

Viewed in isolation, none of these factors is sufficient to create a material question of fact as to whether MBIC created a sham defense. However, taken collectively, the evidence raises a material fact issue. A reasonable jury could find the adjustor, at the time the investigation commenced, had already decided a covered loss had not occurred, and orchestrated the investigation to support his decision. MBIC's failure to include the RRI report—which indicated the roof was in good shape—in its claim evaluation, tends to establish the insurer was manipulating the investigation to achieve a predetermined result. The adjustor's initial statement

to Johnson, his inspection and the Rimkus inspection and report, the failure to evaluate storm damage in the surrounding area, and the insurer's failure to cancel the policy after the February 2009 inspection could all, under this interpretation of the evidence, support a conclusion the insurer created a sham defense.

Therefore, summary judgment on the bad faith claim is inappropriate.

The court finds the same issues of fact preclude summary judgment on plaintiff's punitive damages claim.  A reasonable jury could determine MBIC acted intentionally with malice or reckless disregard of the insured's rights.  *See* 23 O.S. § 9.1(B), (D); *Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1106 (Okla. 2005).

## IV. Conclusion

For the foregoing reasons, MBIC's Motion for Partial Summary Judgment is denied.

ENTERED this 4th day of April, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT